UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| | ) | |
| | ) | CIVIL FILE NO. _____ |
| Edward Charles McDonald | ) | |
| Plaintiff, | ) | |
| v. | ) | **VERIFIED COMPLAINT AND JURY DEMAND** |
| | ) | |
| City of Saint Paul | ) | |
| And | ) | |
| Mayor Christopher B. Coleman | ) | |
| Defendants. | ) | |

Plaintiff, Edward Charles McDonald, by his attorney, complains against Defendants, City of Saint Paul and Mayor Chris Coleman, indvidually, (hereinafter, "Defendants") as follows:

**PRELIMINARY STATEMENT OF THE CASE**

1. Plaintiff seeks injunctive relief, compensatory and punitive damages for acts of unlawful discrimination, retaliation and conspiracy to deprive him of his civil rights pursuant to the Fourteenth Amendment to the United States Constitution, equal protection, Article I, Section 2 of the Minnesota Constitution; 42 U.S.C. §1983; 42

1

U.S.C. §1985; 42 U.S.C. § 1988; 42 U.S.C. §2000(e) *et seq;* Minn. Stat. § 363 *et seq.;* Civil Rights Act of 1991 [Pub.L.No. 102-166, §1745, 105 Stat. 1071 (1991)] and for acts perpetrated by Defendants in violation of Minn. Stat. §13D.01; Minn. Stat. §466.01, *et seq.,* Chapter 12 of the Saint Paul City Ordinance and the common laws of the State of Minnesota.

## JURISDICTION

2. This Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.;* 42 U.S.C. §§1983 and 1985; and the Minnesota Human Rights Act (""MHRA"), *Minn. Stat.* §363.03 *et seq.*, pursuant to 28 U.S.C. §1331 and pendent jurisdiction.

## VENUE

3. Venue is vested in this Court pursuant to 28 U.S.C. §1391(b).

## PLAINTIFF

4. Plaintiff, Edward Charles McDonald, is an adult African American United States citizen who resides in Oakdale, Minnesota, in the County of Washington. Mr. McDonald holds a masters degree in public administration from the John F. Kennedy School of Government at Harvard University and a bachelor's degree in social development from the University of Minnesota -Duluth. Plaintiff has experience working in Saint Paul's city government serving as the Director of the Office of Affirmative Action and as the first coordinator of the Minority Business Development and Retention Initiative (MBDR). He

also played an external volunteer technical assistance role in the process to create the Saint Paul Department of Human Rights and Equal Economic Opportunity (HREEO).

## DEFENDANTS

5. Defendant City of Saint Paul (the "City") is a municipal corporation, a city of the first class of the State of Minnesota pursuant to Minn. Stat. § 410.01, and a political subdivision of the State of Minnesota as that term is defined in Minn. Stat. § 13.02 Subd. 11.

6. Christopher B. Coleman is the duly elected mayor of the City of Saint Paul.

## PROCEDURAL PREREQUISITES

7. On March 16, 2009, Plaintiff filed a charge of retaliation against Defendants with the Equal Employment Opportunity Commission ("EEOC").

8. On March 18, 2009, the EEOC terminated its processing on the charge and issued a right to sue letter. Fewer than ninety days have elapsed since Plaintiff received the right to sue letter.

## FACTS

9. From 2002 to 2003, Plaintiff worked with the City of Saint Paul as its director of the Office of Affirmative Action and Coordinator of Minority Business Development and Retention. The City terminated the Plaintiff's employment after he raised issues about city compliance with equal opportunity laws.

10. Plaintiff organized the community and successfully advocated for a community driven examination to determine the City's compliance with equal opportunity laws. The City approved examination and disparity study showed the City's shoddy application of equal opportunity laws from 2002 -2007 produced under utilization of minority businesses, failed to protect class workers in procurement activities, and passively contributed to marketplace discrimination against minority businesses.

11. The Plaintiff provided volunteer technical assistance to the City approved community task force overseeing the examination, and developing a new administrative structure to improve equal opportunity compliance. This led to the creation of the Office of Human Rights and Equal Economic Opportunity (HREEO).

12. On or about September 10, 2008, Plaintiff received an e-mail notice that the City of Saint Paul was seeking a visionary executive to lead the newly formed Office of Human Rights and Equal Economic Opportunity. The job announcement process section did not indicate candidates would have to undergo a quality survey or psychological assessment.

13. The candidates were directed to information on the City's website about the HREEO and it indicated that the position would be vetted through a community selection process similar to that for the City's police and fire chiefs. A selection Committee was appointed by the Mayor and the City Council. The 12 member committee was also charged with hosting a series of community meetings to engage the public and work with Human Resources on the recruitment, screening and selection of the best possible candidate.

14. The position is an unclassified position and the finalist chosen as director will serve three-year terms at the recommendation of the Mayor and consent of the city council. The salary range is up to $121,000, with starting salary dependent upon experience and qualifications. In addition, the salary is supplemented by Saint Paul's outstanding benefits package.

15. On or about September 22, 2008, Plaintiff submitted an application for the position with the Human Resource Department of the City. On or about November 4, 2008, Plaintiff received a phone call informing him that he qualified and had been selected for an interview. This was followed by an e-mail confirmation from Kelly Barto of the City's Human Resources Department scheduling an interview with the selection committee for November 14, 2008 at 4:00 p.m.

16. On November 10, 2008, Plaintiff received a call from Miquel Purvis - McMoore of KP Companies ( an executive search firm) requesting that he complete and return to her a questionnaire related to the City of Saint Paul's Human Rights and Equal Economic Opportunity selection process to determine if Plaintiff qualifies for the position. Ms. Purvis-McMoore arranged to send the questionnaire on Tuesday November 11, 2008 at 9:30 a.m. and expected Plaintiff to complete and return it to her by 9:30 a.m. on Wednesday November 12, 2008.

17. Plaintiff was surprised by KP Companies request since the City has qualified him for the position and scheduled him for an interview. Plaintiff contacted Kelly Barto and Angela Nalezny with the City to confirm if KP Companies' request was legitimate. It was

confirmed that KP Companies was assisting with recruitment and had recruited some candidates for the position. The City indicated that the questionnaire was not necessary because it covered information that Plaintiff has already provided in his application but suggested that Plaintiff complete the questionnaire for uniformity. It was also indicated that the questionnaire will not be used in the selection committee interview on November 14, 2008 but only in interviews with the Mayor. Despite the short notice, Plaintiff was able to complete and submit the thirteen page questionnaire. Upon information and belief, the other applicants did not need to meet this timeline.

18. On November 14, 2008, the Plaintiff attended the screening committee interview, which included member Susan Kimberly. The Plaintiff filed a workplace conduct complaint against her when they both were employed with the city. While Ms. Kimberly rescued herself from the Plaintiff's interview session, a member of the committee asked the Plaintiff about the workplace conduct complaint. Upon information and belief, the other candidates did not have to answer this question and Ms. Kimberly participated in all other affairs of the screening committee. Committee member A.I. Brown, during interview session, asked the Plaintiff about his whistleblower complaint. Upon information and belief, the other candidates did not have to answer this question. The Committee also asked question from the KP Companies survey contrary to what the Plaintiff has been led to believe.

19. On November 15, 2008, Angela Nalezny, the City's human resources director informed Plaintiff that he was selected as a finalist for the HREEO director position and that he would be interviewed at a community forum and by the mayor who would

appoint one of the finalist to the position. Plaintiff was informed that his selection a finalist meant all his information would be public and he would be required to undergo a psychological assessment and background check. Plaintiff was also informed that he could drop out of the process if he did not want public scrutiny of the information collected on his background and the psychological assessment. Upon information and belief, the other applicants were not told that they could drop out of the process if they did not want to be subjected to public scrutiny.

20. On November 20, 2008, Plaintiff was contacted by the McDowell agency to provide information for a "comprehensive" background check. After Plaintiff confirmed with City human resources department that it was okay to provide the information, Plaintiff provided the McDowell agency with the necessary information.

21. During the psychological assessment interview conducted by DRI Consulting Service on November 24, 2008, Plaintiff was asked questions about the whistle blower complaint he had brought against the City suggesting that he may have had problems at work leading to his termination. Upon information and belief the other finalists were not asked this question. DRI Consulting staff refused to address Plaintiff by his formal name, when requested, and submitted the final assessment report without his formal name.

22. DRI Consulting's assessment report gave Plaintiff high scores but staff narrative related to the score suggested that the results should not be believed because the Plaintiff probably was not being honest or cheated. The DRI Consulting Assessment

was to be confidential and used confidentially by those contributing to the selection decision in the organization. However DRI released the assessment documents in a general email with the assess code to the confidential documents listed in the same email.

23. DRI Consulting would not confirm to Plaintiff if the assessment met the EEOC's guidelines for a norm, validated, and job relatedness assessment. DRI Consulting has admitted in a very public law suit that it does not have the expertise to perform this type of assessment given to the Plaintiff. Upon information and belief, the City of Saint Paul hired DRI Consulting knowing of this admission.

24. On December 4, 2008, Plaintiff was summoned to meet the search committee chair person, council member Melvin Carter to prepare for the community interview forum. The Plaintiff was informed that meetings of this nature can be hostile but the council member would do his best to control the meeting decorum. On December 9, 2008 a public meeting was held in which Plaintiff and the other finalists were asked questions about their visions for the department. The Plaintiff was well received by the community and received applause for many of his answers to questions from the attendees.

25. On December 11, 2008, Plaintiff met with the Mayor and his deputy for the final interview. The majority of the interview was spent listening to the Mayor discuss Eleanor Roosevelt's impact on race relations. There was no mention of the committee vetting, KP Companies quality survey, or DRI consulting psychological assessment results. The Mayor asked three questions: 1) how would the Plaintiff move HREEO into operations? 2) What can the city do in this economic climate to generate more economic activity so

HREEO can have more impact? 3) Was the Plaintiff willing to work for a dollar? The Plaintiff provided the Mayor with his written work plan to implement the operations of HREEO based on City ordinances. The Plaintiff discussed the City's Implementation and Development Plans as the bases for generating additional economic opportunity. The Plaintiff also, discussed his approach to implementing the plan in the current economic climate.

26. On New Year's Eve, December 24, 2008, Deputy Mayor, Ann Mulholland called Plaintiff and left a message on his answering machine. Ms. Mulholland indicated that Plaintiff did a great job at the interview; that the mayor was having a hard time deciding who among the three finalists should get the offer; and that she enjoyed meeting the Plaintiff but regrets to inform Plaintiff that the Mayor had decided to offer the position to one of the other candidates.

27. On December 25, 2008, Plaintiff wrote back to the Mayor and his deputy and thanked them for the opportunity and indicated his continuous interest in the position and an interest in working for or with the administration if there is ever the opportunity.

28. Upon information and believe, the candidate who was offered the position did not accept it. So did the second candidate.

29. On January 20, 2009, Plaintiff received a copy of a series of emails from Erica Schumacher, the Mayor liaison to the screening committee, to community resident Donjia Johnson, one of which was copied to Deputy Mayor Ann Mulholland. The emails implied to the community residents that the Plaintiff had either withdrew from the

selection process or did not accept an offer for the HREEO position. In addition, the emails stated the Mayor had asked to reopen the process or be provided additional candidates.

30. Despite the overwhelming credentials of the Plaintiff and his qualification as one of the three finalists, the Mayor did not offer the position to Plaintiff and instead appointed a member of his staff who was not a finalist for the position depriving Plaintiff of substantially greater income and benefits and denying Plaintiff equal protection under the law and procedural due process.

31. After offering the position to one of the three finalist who turns it down; then to the second who also turns it down, the Mayor does not offer the position to the third finalist but proceeds to hire Luz Maria Frias, a member of the Mayor's staff, who had previously applied for and was not selected for the position and who did not go through the community vetting process. This was a closed process, in violation of the posting and recruiting provisions of Title VII; the selection process and Chapter 12 of the City's Ordinance; and a denial of Plaintiff's rights to procedural due process.

## COUNT I

32. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

33. The actions of Defendants, and each of them, have violated the rights of Plaintiff pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution in that Defendants have, acting under color of state law and Saint Paul city ordinance, deprived Plaintiff of the equal protection of the laws; Defendants have denied Plaintiff equal treatment and equal access, because of his engagement in protected activity, to an employment opportunity with a public institution. These violations have caused Plaintiff to suffer damages.

34. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## COUNT II

35. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

36. The actions of Defendants, and each of them, have violated the rights of Plaintiff pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution in that Defendants have, acting under color of state law and Saint Paul city ordinance, deprived Plaintiff of procedural and substantive due process of law; Defendants have deprived Plaintiff of an opportunity, because of his engagement in protected activity, to avail himself to and benefit from an employment opportunity with a public institution. These violations have caused Plaintiff to suffer damages.

37. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## COUNT III

38. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

39. The actions of Defendants, and each of them, have violated the rights of Plaintiff pursuant to 42 U.S.C. § 1985; Defendants have conspired to deny Plaintiff an employment opportunity with a public institution because of his engagement in protected activity, and have acted in furtherance of that conspiracy against Plaintiff because of his engagement in protected activity. Said acts have deprived Plaintiff, directly and indirectly, of due process and equal protection of the laws, and of the privileges and immunities secured to Plaintiff under the laws of the United States. These violations have caused Plaintiff to suffer damages.

40. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## COUNT IV

41. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

42. The actions of Defendants, and each of them, have violated Plaintiff's rights pursuant to Title VII (42. U.S.C. §2000(e) *et seq.*); Defendants have denied and interfered with Plaintiff's attempt to avail himself to and benefit from an employment opportunity with a public institution because of his engagement in protected activity. These violations have caused Plaintiff to suffer damages.

43. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## COUNT V

44. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

45. The actions of the Defendants, and each of them, have violated Plaintiff's rights pursuant to Title VII 42 U.S.C. §2000e-3(a); Defendants have retaliated against Plaintiff because Plaintiff is an individual who has engaged in protected activity. These violations have caused Plaintiff to suffer damages.

46. Plaintiff demands injunctive relief and damages for this violation as a more fully set forth below.

## COUNT VI

47. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

48. The actions of Defendants, and each of them, have violated the rights of Plaintiff pursuant to Title IX (20 U.S.C. § 1681, *et seq.*); Defendants have discriminated against Plaintiff and have denied and interfered with his attempts to participate in and avail himself to the benefits of a federally financed public institution because of his engagement in protected activity. These violations have caused Plaintiff to suffer damages.

49. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## COUNT VII

50. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

51. The actions of Defendants, and each of them, have violated the rights of Plaintiff pursuant to Minn. Stat. §363A.15(1) in that Defendants have intentionally engaged in a reprisal against Plaintiff because Plaintiff had asserted his rights previously under Minn. Stat. §363A *et seq.* These violations have caused Plaintiff to suffer damages.

52. Plaintiff demands injunctive relief and damages for the violation as more fully set forth below.

## COUNT VIII

53. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

54. The actions of Defendants, and each of them, have violated the rights of Plaintiff pursuant to Minn. Stat. §363A.14 (1) in that Defendants have discriminated against Plaintiff by intentionally aiding, abetting, inciting, or compelling, or attempting to do so, other persons to engage in practices forbidden by Minn. Stat. Chapter 363A. These violations have caused Plaintiff to suffer damages.

## COUNT IX

55. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

56. The actions of the Defendants, and each of them, have violated the rights of Plaintiff pursuant to Article I, Section 2 of the Minnesota Constitution (1857); Defendants have deprived Plaintiff of the equal protection of the laws because of his engagement in protected activity. These violations have caused Plaintiff to suffer damages.

57. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## COUNT X

58. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

59. The actions of Defendants, and each of them, have violated the rights of Plaintiff pursuant to Article I, Section 2, of the Minnesota Constitution (1857); Defendants have deprived Plaintiff of procedural and substantive due process of law because of his engagement in protected activity. These violations have caused Plaintiff to suffer damages.

60. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## COUNT XI

61. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

62. The actions of Defendants, their officers, employees and agents, constitute an intentional, willful, wanton, malicious and outrageous infliction of emotional distress. These actions of the Defendants have caused Plaintiff to suffer damages.

63. Plaintiff demands injunctive relief and damages for this violation as more fully set forth below.

## PUNITIVE DAMAGES

64. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

65. The Defendants and each of them acted with malice or reckless indifference to Plaintiff's federally protected rights.

66. Plaintiff demands punitive damages against the City and the Mayor pursuant to Title VII of the Civil Rights Act of 1964 as well as the Civil Rights Act of 1991, 42 U.S.C. §1981 a(b)(1) and Minn. Stat. §363A.29 subd.4(b).

## INJUNCTIVE RELIEF

67. Plaintiff re-alleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

68. Plaintiff asks for the following permanent injunctive relief:

Requiring the City, Mayor and their officers, employees and agents, to cease and desist from all conduct, now and in the future, that is based on the protected activities of an individual and that has the purpose or effect of unreasonably interfering with an individual's full participation in or pursuit of employment, or other opportunities provided by or through the City and to cease and desist from retaliation and closed recruiting.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor against Defendants as followings:

1. Finding in favor of Plaintiff that Defendants violated 42 U.S.C. § 1983, 42 U.S.C. § 1985, Title VII (42 U.S.C. § 2000(e) et seq.), Title IX (20 U.S.C. § 1681, et seq.) and the Fourteenth Amendment of the United States Constitution;

2. Finding in favor of Plaintiff that Defendants have violated Minn. Stat. §363A.51(1), 363A.14(1) and the Minnesota Constitution;

3. Actual and compensatory damages in an amount to be determined by the Court

4. Punitive damages in an amount to be determined by the Court;

3. Attorney's fees, costs and disbursements, pursuant to 42 U.S.C. § 1988; 42 U.S.C. § 2000(e); Minn. Stat. §363A.33 subd. 7; and Minn. Stat. §549.20;

4. Such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, Edward Charles McDonald, hereby demands trial by jury of all issues involved in this proceeding. This demand is made pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April ____, 2009

FONDUNGALLAH KIGHAM & ESSIEN, LLC

_____

Michael A Fondungallah, # 0310748
mfondungallah@fondlaw.com
2499 Rice Street, Suite 236
Saint Paul, MN 55113
Tel: (651) 482-0520
Fax: (651) 482-0530
Attorney for Plaintiff

## VERIFICATION

I, Edward Charles McDonald, a citizen of the United States and a resident of the State of Minnesota, have read the forgoing Verified Complaint and declare under the penalty of perjury and under the laws of the United States the foregoing is true and correct.

Dated this ___ day of April, 2009

_____
Edward Charles McDonald